IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JANICE BOWIE,<br>   *Plaintiff*,<br><br>v.<br><br>UNIVERSITY OF MARYLAND MEDICAL SYSTEM,<br>   *Defendant*. | Civil Action No. ELH-14-03216 |

**MEMORANDUM OPINION**

On October 10, 2014, plaintiff Janice Bowie filed suit against the University of Maryland Medical System[1] ("UMMS"), defendant, alleging employment discrimination. *See* ECF 1. Bowie claims violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12111 *et seq*.; Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq*.; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621-634 ("ADEA"); and the Genetic Information Nondiscrimination Act ("GINA"), 42 U.S.C. §§ 2000ff *et seq*. *Id*. at 1. She asserts that defendant discriminated against her when it denied her an accommodation she requested for her disability, and when it "refused [her] the opportunity to return to employment with Defendant as a Physical Therapist because of" her disability and/or because of her request for reasonable accommodations. *Id*. at 2.

Now pending is defendant's motion to dismiss, filed pursuant to Fed. R. Civ. P. 12(b)(6). ECF 11 ("Motion"). UMMS argues that plaintiff's claims are time-barred because she failed to

---

[1] Bowie named "University of Maryland Medical Systems," with an "s," in her Complaint. ECF 1 at 1. In their Motion, defendant clarifies that the correct name is "University of Maryland Medical System," with no "s" at the end of System. ECF 11 at 1.

file suit within ninety days of receiving a "Dismissal and Notice of Rights" letter from the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 1. In defendant's memorandum in support of its Motion, *see* ECF 11-1 ("Memo"), defendant also contends, in a footnote, that plaintiff failed to exhaust her claims under Title VII, the ADEA, and the GINA because she did not include those claims in any Charge of Discrimination submitted to the EEOC. ECF 11-1 at 1 n.1.[2] Defendant submitted a copy of the charge plaintiff submitted to the EEOC. ECF 11-3 ("EEOC Charge"). Plaintiff opposes the motion, ECF 13 ("Opposition"), and defendant has replied. ECF 14 ("Reply").

The Motion has been fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I will grant the Motion.

**I. Factual Background**

Bowie was employed by UMMS as a Physical Therapist from June 2006 until "on or about May 17, 2012." ECF 1 ¶ 6. "While Plaintiff was employed with Defendant," she was diagnosed with Multiple Sclerosis. *Id.* ¶ 12(a). At some unspecified time, "Plaintiff's condition

---

[2] Curiously, despite the assertion of failure to exhaust, defendant has not moved to dismiss under Rule 12(b)(1), for lack of subject matter jurisdiction. Nonetheless, this is an issue that I must consider.

"It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). "[J]urisdiction goes to the very power of the Court to act." *Ellenbury v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008). Moreover, "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). And, "[b]ecause jurisdictional limits define the very foundation of judicial authority, subject matter jurisdiction must, when questioned, be decided before any other matter." *United States v. Wilson*, 699 F.3d 789, 793 (4th Cir. 2012). Pursuant to Fed. R. Civ. P. 12(h)(3), "the court must dismiss the action" if "at any time" it determines that it lacks subject matter jurisdiction. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07 (2006).

worsened such that [she] was required to take a leave of absence from her employment with Defendant." *Id*. ¶ 12(b). At some other unspecified time, but apparently before May 9, 2012, plaintiff requested accommodations for her disability. *Id*. ¶¶ 12(c); 7(c). "[O]n or about May 21, 2012, Plaintiff received a letter dated May 9, 2012 informing [her] that [her] request for … accommodations was denied." *Id.* ¶ 12(c). "[O]n or about May 22, 2012, Plaintiff requested a FMLA leave of absence, which was denied by Defendant." *Id.* ¶ 12(d). Bowie further alleges that on May 22, 2012, and again on June 19, 2012, her "health care provider" "provided" a "Duty Status Form" stating that Bowie could return to work with certain light-duty accommodations specified in the Complaint. *Id*. ¶ 12(e)-(f). Plaintiff does not say whether she provided this information to defendant, nor does she explain the circumstances of her final separation from employment. *See id.* ¶ 6 (alleging plaintiff stopped working with defendant on or about May 17, 2012).

Bowie filed a formal Charge of Discrimination with the EEOC on June 4, 2012. ECF 1 ¶ 8; ECF 11-3.[3] In her EEOC Charge, Bowie checked retaliation and disability as the bases for defendant's alleged discrimination. ECF 11-3. She did not check race, color, sex, religion, national origin, age, genetic information, or "other." *Id.* She specified the earliest date of discrimination as May 21, 2012, and the latest as May 22, 2012. *Id*. The EEOC Charge "particulars" state as follows, *id.*:

---

[3] As stated, defendant submitted with its Motion a copy of an EEOC Charge filed by plaintiff. ECF 11-3. This appears to be the same EEOC Charge referenced in the Complaint. It shows that plaintiff signed the charge, and the EEOC's field office in Baltimore received it, on June 4, 2012. *Id.* Although the document also indicates that it could have been filed with the Maryland Commission on Civil Rights, the date stamp shows that it was in fact presented to the EEOC, rather than the State agency. *Id*. Plaintiff did not dispute the authenticity of this document in her Opposition. ECF 13.

    I.      I was hired by the above named employer in June 2006. My most recently held position was as a Physical Therapist. On May 1, 2012, I went out on leave due to my disability with an expected return to work date of May 29, 2012. On May 21, 2012, I received a letter dated May 9, 2012 from Sheila Schaffer, Outpatient Therapy Manager, informing me that my request for breaks as a reasonable accommodation for my disability was denied. On or about May 22, 2012, I received written notice that because my FMLA leave request was denied, my employer was recruiting to fill my position.

    II.     No reasonable explanation was given to me for the above actions.

    III.    I believe I have been discriminated against with respect to reasonable accommodation because of my disability in violation of the Americans with Disabilities Act Amendments Act of 2008 (ADAAA). I also believe I have not been allowed to return to my position because of my disability and for requesting reasonable accommodation in violation of the same statute.

On July 11, 2014, Bowie received a "Dismissal and Notice of Rights" from the EEOC. ECF 1 ¶ 9. In her Complaint, plaintiff states that the document is attached to her Complaint as Exhibit 1, but no exhibits or supplements to the Complaint were in fact filed with the Court. *See id.* However, defendant has attached a copy of the document to its Motion. *See* ECF 11-5 ("Right to Sue Letter"). Plaintiff has not disputed the authenticity of this document. *See* ECF 13.

Plaintiff filed suit on Friday, October 10, 2014. *See* ECF 1. Counting from July 11, 2014, *see infra*, the filing was made ninety-one days after the day plaintiff received her Right to Sue Letter. *See id.* ¶ 9.

## II. Title VII, GINA, and ADEA Claims

As stated, UMMS observes that Bowie failed to allege any claims under Title VII, GINA, or the ADEA in her EEOC Charge. Memo, ECF 11-1 at 1 n.1. Rather, she alleged only a violation of the ADA. Consequently, UMMS asserts that plaintiff has failed to exhaust

administratively all of these claims. *Id.* This contention constitutes a challenge to this Court's subject matter jurisdiction.

### A. Standard of Review

A challenge to a federal court's subject matter jurisdiction is reviewed pursuant to Fed. R. Civ. P. 12(b)(1). A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true,'" or that other facts, outside the four corners of the complaint, preclude the exercise of subject matter jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013).

Defendant brings a factual challenge because it argues that Bowie's Title VII, ADEA, and GINA claims were not included in the EEOC Charge. ECF 11-1 at 1 n.1. In other words, defendant alleges that facts not included in the Complaint preclude jurisdiction. In considering a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009) ("Unless 'the jurisdictional facts are intertwined with the facts central to the merits of the dispute,' the district court may … resolve the

jurisdictional facts in dispute by considering evidence … such as affidavits.") (citation omitted). Therefore, I may consider the EEOC charge.[4]

### B. Statutory Exhaustion Requirements

#### 1. Title VII

Title VII prohibits an employer from discriminating against "any individual with respect to his compensation terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). It also prohibits employers from discriminating against an employee because the employee has filed a grievance or complaint regarding an employment practice that allegedly violates Title VII's antidiscrimination provision. *See* 42 U.S.C. § 2000e-3(a).

However, a potential plaintiff must file a charge with the EEOC before filing suit in a federal court under Title VII. 42 U.S.C. § 2000e-5(f)(1) (2006) (permitting civil suit by the "person claiming to be aggrieved" after filing of a charge with the EEOC and upon receipt of a right-to-sue letter); *see also*, *e.g.*, *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *Puryear v. Cnty. of Roanoke*, 214 F.3d 514, 518 (4th Cir. 2000). This "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles*, 429 F.3d at 491.

---

[4] Courts commonly consider EEOC charges as integral to a plaintiff's Complaint, *i.e.*, effectively a part of the pleading, even if the EEOC charge is not filed with the Complaint. *See*, *e.g.*, *Rhodes v. Montgomery Cnty. Dept. of Corr. & Rehab.*, AW-12-03172, 2013 WL 791208, at *6 (D. Md. Mar. 1, 2013) (court may consider a charge of discrimination attached to motion to dismiss where the charge is integral to the complaint and where its authenticity is undisputed); *Betof v. Suburban Hosp., Inc.*, DKC-11-01452, 2012 WL 2564781, at *3 n.6 (D. Md. June 29, 2012) (same); *White v. Mortgage Dynamics, Inc.*, 528 F. Supp. 2d 576, 579 (D. Md. 2007) (a court may consider a charge of discrimination attached to motion to dismiss where charge was incorporated by reference, integral to the complaint, and no party objected). Thus, this might also be considered a facial challenge.

The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Institution*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, together with the agency investigation and settlement process it initiates, the requirement "'reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)).[5] "Allowing [the EEOC] first crack at these cases respects Congress's intent … ." *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012).

Title VII's exhaustion requirement also functions as a jurisdictional bar in federal courts where plaintiffs have failed to comply with it. In *Balas*, 711 F.3d at 406, the Court said: "[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." Even when, as here, a plaintiff has filed a claim with the EEOC, a court cannot consider matters that were not properly raised during the EEOC process. *See, e.g.*, *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (quoting *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)) ("'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'"); *Miles*, 429 F.3d at 491.

To determine whether a plaintiff has "properly alleged [a claim] before the EEOC" in a manner satisfying the exhaustion requirement, courts "may look *only* to the charge filed with that

---

[5] For a description of the full process, *see Balas*, 711 F.3d at 407.

agency." *Balas*, 711 F.3d at 408 (emphasis added); *see also Evans*, 80 F.3d at 962-63 ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."); *Chacko*, 429 F.3d at 506 ("This charge frames the scope of future litigation."). Although courts "recognize that EEOC charges often are not completed by lawyers and as such must be construed with utmost liberality," courts are "not at liberty to read into administrative charges allegations they do not contain." *Balas*, 711 F.3d at 408 (citations and quotation marks omitted). Rather, courts are constrained by the four corners of the charge and the inference of "'any charges that would naturally have arisen from an investigation thereof … .'" *Balas*, 711 F.3d at 407-08 (citations omitted); *see also Sydnor*, 681 F.3d at 594 ("[A]n administrative charge of discrimination does not strictly limit a Title VII suit which may follow. Instead, so long as a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may advance such claims in her subsequent civil suit."); *accord Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 669 (4th Cir. 2015).

The Fourth Circuit has consistently found that plaintiffs failed to exhaust claims where the complaint alleged a violation on a forbidden basis (*i.e.*, race or sex) not alleged in any EEOC Charge. *See Calvert Grp.*, 551 F.3d at 301 (plaintiff failed to exhaust claim for racial discrimination because EEOC Charge alleged only retaliation); *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132–33 (4th Cir. 2002) (plaintiff failed to exhaust claim for sex discrimination because EEOC Charge alleged only racial discrimination); *Evans*, 80 F.3d at 963 (plaintiff failed to exhaust claim for age discrimination because EEOC Charge alleged only sex discrimination).

## 2. GINA

"GINA 'prohibit[s] discrimination on the basis of genetic information with respect to health insurance and employment.'" *Echols v. Living Classrooms Found., Inc.*, WDQ-13-03156, 2014 WL 6835559, at *7 (D. Md. Dec. 2, 2014) (quoting Pub. L. No. 110–233, § 2, 122 Stat. 881 (2008)). Like Title VII, it also prohibits employers from retaliating against employees for engaging in protected civil rights enforcement activities. 42 U.S.C. § 2000ff-6(f). But, GINA expressly incorporates Title VII's exhaustion requirements for employees covered by Title VII. *See* 42 U.S.C. § 2000ff-6(a)(1);[6] *see also Echols*, 2014 WL 6835559, at *7 (applying Title VII's exhaustion requirements to GINA claim and dismissing GINA claim for lack of subject matter jurisdiction where plaintiff's EEOC Charge did not include GINA claim).

## 3. ADEA

"The ADEA makes it 'unlawful for an employer ... to discharge any individual ... because of such individual's age.'" *Calvert Grp.*, 551 F.3d at 300 (quoting 29 U.S.C.A. § 623(a)(1)). Like Title VII and the GINA, it prohibits employers from retaliating against employees for engaging in protected civil rights enforcement activities. 29 U.S.C. § 623(d). Although the ADEA sets out procedural requirements that are slightly different than those for Title VII, *see* 29 U.S.C. § 626(d)(1), failure to file an ADEA claim with the EEOC is a jurisdictional bar to suit in this Court, just as it is under Title VII. *See*, *e.g.*, *Calvert Grp.*, 551 F.3d at 300-01 ("Importantly,

---

[6] Subsection (a)(1) of 42 U.S.C. § 2000ff states: "The powers, procedures, and remedies provided in sections 705, 706, 707, 709, 710, and 711 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-4 et seq.) to the Commission, the Attorney General, or any person, alleging a violation of title VII of that Act (42 U.S.C. 2000e et seq.) shall be the powers, procedures, and remedies this chapter provides to the Commission, the Attorney General, or any person, respectively, alleging an unlawful employment practice in violation of this chapter against an employee described in section 2000ff(2)(A)(i) of this title, except as provided in paragraphs (2) and (3)."

a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim. The same is true of claims made under the ADEA. *See* 29 U.S.C.A. § 626(d); *Vance v. Whirlpool Corp.*, 707 F.2d 483, 486-89 (4th Cir. 1983) (holding that plaintiff's failure to wait 60 days after filing federal administrative charge before bringing suit in federal district court deprived district court of subject matter jurisdiction).") (some citations omitted).

### C. Dismissal of Plaintiff's Title VII, GINA, and ADEA Claims

I agree with UMMS that Bowie has failed to exhaust her claims under Title VII, the ADEA, and the GINA. *See* Memo, ECF 11-1 at 1 n.1. As discussed in the Factual Background, in completing her EEOC Charge, plaintiff did not check boxes indicating that she believed defendant discriminated against her on the basis of race, color, sex, religion, national origin, age, genetic information, or other. ECF 11-3. And, nothing set forth in the "Particulars" of the EEOC Charge is reasonably related to such claims on those bases.

It is true that plaintiff did check the box next to "retaliation," indicating she believes defendant discriminated against her because of some unidentified, protected civil rights activity in which she engaged. ECF 11-3. And, as stated above, it is true that Title VII, GINA, and the ADEA all enable plaintiffs to bring retaliation claims. However, the ADA also prohibits retaliation. *See* 42 U.S.C. § 12203. And, that is the only statute that plaintiff actually mentioned. Moreover, the facts as alleged by plaintiff are consistent only with an ADA claim.

Based on the facts alleged, and on Bowie's checking of only the "disability" and "retaliation" boxes, no one could have reasonably thought that Bowie meant retaliation under Title VII, GINA, or the ADEA, rather than retaliation under the ADA. The facts do not indicate

that Bowie engaged in civil rights activity protected by anything other than the ADA, if that. Indeed, as stated, nothing in the EEOC Charge suggests that plaintiff believed she had been discriminated against on any other basis, or retaliated against for reporting discrimination on some other basis.

Accordingly, Bowie has failed to exhaust her claims under Title VII, the ADEA, and the GINA. Therefore, this Court lacks subject matter jurisdiction over those claims, and they will be dismissed, without prejudice.[7]

### III. ADA Claims

### A. Standard of Review

Defendant's Motion is expressly predicated on Fed. R. Civ. P. 12(b)(6). A defendant may test the sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 n.3 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

---

[7] Alternatively, the claims were not timely filed with this Court, for the reasons discussed, *infra*. *See* 42 U.S.C. § 2000e-5 (Title VII ninety-day filing requirement); 42 U.S.C. § 2000ff-6(f) (GINA, incorporating Title VII enforcement provisions); 29 U.S.C. § 626(e) (ADEA ninety-day filing requirement).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir.), *cert. denied*, ––– U.S. –––, 132 S. Ct. 402 (2011); *Monroe v. City of Charlottesville,* 579 F.3d 380, 385–86 (4th Cir. 2009), *cert. denied*, 559 U.S. 991 (2010). Generally, a court's consideration of a Rule 12(b)(6) motion is confined to facts alleged in the operative pleading. So, a court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013).[8]

A motion asserting failure to state a claim typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses," *Edwards*, 178 F.3d at 243 (quotation marks omitted), unless such a defense can be resolved on the basis of the facts alleged in the complaint. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). "This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear [ ] on the face of the complaint,'" or in other documents that are proper subjects

---

[8] As I mentioned earlier, a court may properly consider certain documents "attached or incorporated into the complaint," as well as documents attached to the defendant's motion, "so long as they are integral to the complaint and authentic." *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). Certainly, the EEOC Charge and Right to Sue Letter are integral here, and their authenticity is not disputed. In any event, the merit of defendant's statute of limitations defense is clear on the face on the Complaint.

of consideration under Rule 12(b)(6). *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

### B. Dismissal of Plaintiff's ADA Claims

"The ADA makes it unlawful for covered employers to 'discriminate against a qualified individual on the basis of disability.'" *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014) (quoting 42 U.S.C. § 12112(a) (2012)). "The Act prohibits covered employers from discharging qualified employees because they are disabled." *Summers*, 740 F.3d at 328. And, "[s]uch unlawful discrimination can include the failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee … .'" *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 344 (4th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)(A)) (alterations in *Wilson*).

The ADA, like Title VII, requires that a plaintiff commence a court action within ninety days of receipt of his or her right to sue notice from the EEOC. *See* 42 U.S.C. § 12117 (ADA); 42 U.S.C. § 2000e-5 (Title VII). The ninety-day period begins to run on the date that a claimant receives her or his right to sue notice. *See*, *e.g.*, *Davis v. Va. Commonwealth Univ.*, 180 F.3d 626, 628 (4th Cir. 1999) ("Miss Davis received the right to sue letter on the second EEOC charge (disability, etc.) on October 1, 1996. Thus, the 90 day statute of limitations began to run on October 1, 1996 and expired on December 30, 1996."); *Harvey v. City of New Police Dep't*, 813 F.2d 652, 653 (4th Cir. 1987) (finding ninety-day limitations period on suit under Title VII began to run on the day of receipt of a right-to-sue letter from the EEOC); *Cepada v. Bd. of Educ. of Baltimore Cnty.*, WDQ-10-0537, 2010 WL 3824221, at *3 (D. Md. Sept. 27, 2010) ("[T]he 90-day [limitations] period begins on the date the claimant receives the right-to-sue letter.").

"The 90-day filing requirement is 'not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.' *Laber v. Harvey*, 438 F.3d 404, 429 n.25 (4th Cir. 2006) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982))." *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 321 (4th Cir. 2011) (affirming application of equitable tolling to ADA's ninety-day filing requirement); *see also Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) (finding Title VII plaintiff's failure to file suit within ninety days did not warrant equitable tolling).

Generally speaking, the doctrine of equitable tolling "has been applied in two … kinds of situations." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000); *accord*, *e.g.*, *Crabill*, 423 F. App'x at 321.  "In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant." *Harris*, 209 F.3d at 330.  "In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Id.* (citation omitted).

Bowie alleges in her Complaint that she received the Right to Sue Letter on July 11, 2014.  ECF 1 ¶ 9.  Accordingly, Bowie had to file suit by Thursday, October 9, 2014, which is ninety days after July 11, 2014.  But, Bowie filed suit on October 10, 2014.  In her Opposition, Bowie argues that her Complaint was "timely filed" because "Defendant's calculation of the time" is "incorrect."  ECF 13 at 1.  Bowie does not explain why she believes UMMS's calculation is incorrect, however.  *Id.*  In any event, it is clear on the face of the Complaint that Bowie did not file her ADA claims within ninety days from the date of receipt of her Right to

Sue Letter, as required by 42 U.S.C. § 12117(a).  If plaintiff believes the ninety-day period began to run on some other day, she has failed to say which day, or why.

Bowie also argues that she should be "allow[ed] … to continue [her] cause before the Court" because she 1) lacked internet access in her home on October 9, 2014, and 2) "was under the stress and duress of the allegations of the Defendant."  *Id*. at 1-2.  I will construe these contentions under principles of equitable tolling.

With regard to Bowie's implicit request that I apply equitable tolling, the explanations for delay that plaintiff provided are nothing out of the ordinary.  And, as defendant argues, *see* Reply, ECF 14 at 1-4, Bowie does not explain why she could not have filed suit on October 9, 2014, or any of the eighty-nine days before then.  Plaintiff's claims are far from sufficient to invoke serious consideration of the extraordinary remedy of equitable tolling; the doctrine does not extend "to what is at best a garden variety claim of excusable neglect."  *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

Accordingly, plaintiff's ADA claims shall be dismissed, with prejudice, as time-barred.

## Conclusion

For the foregoing reasons, I will GRANT the Motion (ECF 11).  I will dismiss plaintiff's Title VII, GINA, and ADEA claims, without prejudice, for lack of subject matter jurisdiction.  I will dismiss plaintiff's ADA claims, with prejudice, as time-barred.  A separate Order follows, consistent with this Memorandum.

Date: March 31, 2015                              /s/
                                                                  Ellen Lipton Hollander
                                                                  United States District Judge